W. C. CALLAND et al., Appellants, v. CITY OF SPRINGFIELD et al.

In Banc, March 3, 1915.

1. CONSTITUTION: A Harmonious Chart. The Constitution of Missouri was designed by its framers to be a single, symmetrical and harmonious chart of government, free from repugnancy and conflict in any of its provisions.

2. ————: ————: Classification of Cities: Taxation. The Constitution in requiring the General Assembly by general laws to divide cities into four classes and to give each class the same powers and to subject them to the same restrictions had in view their organization, and plainly referred to their constituent agencies and governmental functions; it did not mean that the rate of taxation for municipal purposes must be inflexibly the same in all cities of the class, whether or not one city of the class might, because of its population, be entitled to become a city of a higher class.

3. ————: ————: Cities of the Third Class: Rate of Taxation. There is no conflict in the provision of the Constitution authorizing a city having a population of thirty thousand to levy taxes at a rate not to exceed one hundred cents on the one hundred dollars' valuation, and the other provision requiring the General Assembly to divide the cities of the State into four classes and to so define their powers that "all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." The last provision does not mean that a city of the third class, which has a population in excess of thirty thousand, cannot levy a tax of one dollar on the hundred, simply because it is and has for many years been a city of the third class, although the statute says that cities of the third class shall be those containing three thousand and less than thirty thousand inhabitants. The two provisions, when read together, mean that a city having thirty thousand inhabitants or more may levy taxes not exceedi _ one hundred cents on the hundred dollars' valuation, whatever class it may belong to.

4. ————: Rate of Taxation: Vote of People: Census. Sec. 9248,
R. S. 1909, in so far as it undertakes to make a tax for municipal
purposes in excess of sixty cents on the hundred dollars' valua-
tion depend upon a majority vote of the people is unconstitu-
tional, since it is an attempt by the Legislature to take away
a constitutional grant of power, and to restrict the exercise
thereof. But in so far as it authorizes a census to be taken
by the city for the purpose of ascertaining whether the city
possesses the requisite population entitling it to impose a tax
of one dollar on the hundred, it is constitutional.

Appeal from Greene Circuit Court.—*Hon. Guy D.
Kirby,* Judge.

AFFIRMED.

*J. J. Gideon, G. W. Goad, H. T. Lincoln* and *J. B.
Fenton, Jr.,* for appellants.

(1) The constitutional limitations on the rate of
taxation under section 11, article 10, is self-enforce-
ing as a limitation on taxation, by cities. But the Con-
stitution of its own force confers no power upon cities
to levy taxes. The taxing power in cities is derived
from the General Assembly, and not directly from the
Constitution. Constitution, sec. 1, art. 10; Brooks v.
Schultz, 178 Mo. 222; Arnold v. Hawkins, 95 Mo. 569;
State ex rel. v. Van Every, 75 Mo. 537. (2) The tax
levy in controversy is in violation of section 7, article
9, and section 11, article 10, of the Constitution. Under
said section 11, no city of the third class under 30,000
population can levy taxes exceeding sixty cents on the
one hundred dollars. Under said section 7 the city of
Springfield has no power to levy any tax, general or
special, which cannot be levied by any and every other
city of the third class. Murnane v. St. Louis, 123 Mo.
479; Kansas City v. Scarrett, 127 Mo. 642; St. Louis v.
Dorr, 145 Mo. 466; Kansas City v. Stegmeyer, 151 Mo.
189; Owen v. Baer, 154 Mo. 434; State ex rel. v. Bor-
den, 164 Mo. 221; Etling v. Hickman, 172 Mo. 237; Ex
parte Handler, 176 Mo. 383; State ex rel. v. Clayton,

226 Mo. 292; Hall v. Sedalia, 232 Mo. 344; Ward v. Paving Co., 79 Fed. 390; Paving Co. v. Ward, 85 Fed. 27; People ex rel. v. Gaulter, 149 Ill. 39; Saunders v. Seehorn, 98 Cal. 227. The meaning of the language used in section 7, article 9, of the Constitution, is clear and unambiguous, and it is the duty of the court to declare, that said language means what it says. Neither is there any conflict between said section 7, article 9, and section 12, article 10. Both may be enforced according to the terms thereof without reading an exception into either, by construction. 8 Cyc. 730, 733; McGrew v. Railroad, 230 Mo. 535; Wells v. Railroad, 110 Mo. 296; Burns v. Gibson, 195 Mo. 251; Barnard & Co. v. Knox Co., 105 Mo. 390; State ex rel. v. Gammon, 73 Mo. 521; Cooley's Constitutional Limitations, p. 70; Sutherland on Statutory Construction, pp. 461, 462; Chance v. Marion Co., 64 Ill. 66; Cantwell v. Owens, 14 Md. 215; Hill v. Chicago, 60 Ill. 91. (3) If the court holds that the tax levy in controversy is not in violation of article 7, section 9, and section 11, article 10, of the Constitution, then said levy is void under the terms of the Act of 1905, now Sec. 9248, R. S. 1909, as said section 9248 is not unconstitutional. (a) On account insufficient title. State ex rel. v. County Court, 128 Mo. 441; State ex rel. v. Brown, 115 Mo. 175; State v. Doerring, 194 Mo. 407; State ex rel. v. Ranson, 73 Mo. 86; O'Brien v. Ash, 169 Mo. 283; Nalle v. Insurance Co., 250 Mo. 452; State v. Vandever, 222 Mo. 206; State v. Gordon, 223 Mo. 1. (b) On account of the local option clause. Hall v. Sedalia, 232 Mo. 344. (4) If the court holds that section 9248 is void on account of insufficient title, or the local option clause, then the whole act is void including repealing clause. This would leave the Act of 1893 (Sec. 5853, R. S. 1899) valid and in force and which prohibits the levy of the tax in controversy. Copeland v. St. Joseph, 126 Mo. 417; Birch v. Plattsburg, 180 Mo. 419; Kansas City v. Cook, 69 Mo. 127; State ex rel. v. Wardell,

153 Mo. 323; State v. Kring, 74 Mo. 612; State ex rel. v. Miller, 231 Mo. 498; State v. Thomas, 138 Mo. 95. (5) The twenty cent levy in controversy is void for the reason that it is a special tax, for a special purpose unauthorized by law. State ex rel. v. Van Every, 75 Mo. 437; Arnold v. Hawkins, 95 Mo. 569; Railroad v. Apperion, 97 Mo. 308; State ex rel. v. Shortredge, 56 Mo. 130; State ex rel. v. Salem, 45 Mo. 242; State ex rel. v. Railroad, 169 Mo. 563.

*Leonard Walker* and *Barbour & McDavid* for respondents.

## STATEMENT.

Plaintiffs, who are resident taxpayers of the city of Springfield, Missouri, owning real estate therein, which is assessed for taxing purposes, bring this action on behalf of themselves and others similarly situated, to restrain said city from the collection of a special tax of twenty cents on the one hundred dollars levied by it for the special purpose of maintaining, keeping up and supporting a fire department. Joined with said city as a codefendant, is the city collector of taxes. The petition set out *in extenso* the ordinance of the city, under which the item of taxation and all other taxes for the fiscal year 1913 were to be assessed and provided for, and attacked the validity of the provision levying a tax for the support of the fire department on certain statutory and constitutional grounds hereafter noted.

The answer of the defendants was a general denial, coupled with certain allegations in avoidance of the attack made in the petition upon the validity of the ordinance.

After the joinder of these issues by reply, the case was tried upon an agreed statement of facts setting forth in substance that the city of Springfield has been

for twenty-five years a city of the third class; that by an ordinance duly enacted, No. 7856, and approved by the mayor on July 2, 1913, the city taxes were levied for the ensuing fiscal year; that the aggregate amount of the taxes thus levied for all purposes was one dollar on the one hundred dollar valuation of the property taxed; that all of the taxes were levied on the same day and under one and the same ordinance and, including the item of twenty cents on the one hundred dollars, were levied to meet the general current expenses of the city to be incurred during the year following; that the city owned and maintained four different permanent fire stations and buildings, thoroughly furnished with modern appliances, and employed fifty experienced firemen to carry on that department, and that the sum levied for the support and maintenance of that department is a reasonable one. The total valuation of the taxable property of the city for the year beginning July 1, 1903, was $17,154,495; that according to the last census taken in 1910 by the Federal Government the city of Springfield had and now has thirty-five thousand two hundred and one inhabitants; that no census of the city's inhabitants has been taken since.

The agreed statement of facts set forth the manner of the enactment of section 9248 of the Revision of 1909. The court found the issues in favor of the defendants and dismissed plaintiffs' bill. The legal questions presented by the pleadings and the relevant evidence will be discussed in the opinion.

Plaintiffs duly perfected their appeal to this court.

## OPINION.

BOND, J. (After stating the above facts.)—The theory of the petition in this case is that the portion of the ordinance of Springfield, enacted July 2, 1913, to levy taxes for that year, which levied a tax of twenty cents on one hundred dollars of property valuation for the support of the fire department was void under the constitutional provisions (Section 11, article 10, and section 7, article 9):

*City: Taxation in Excess of Others of Same Class.*

First, for that the said city being one of the third class, although of thirty-five thousand two hundred and one population, and hence entitled to levy taxes not exceeding one dollar per one hundred dollars of property valuation (Constitution, art. 10, sec. 11) was debarred from exercising that power by the terms of another section of the Constitution (Art. 9, sec. 7) requiring the Legislature to divide the cities and towns of the State in four classes, so that each class shall "possess the same powers and be subject to the same restrictions," and the admitted fact that Springfield had not chosen to become a city of the higher class to which its population exceeding thirty thousand entitled it, wherefore if it were allowed to levy its taxes upon the constitutional basis of population (Art. 10, sec. 11) it would thereby have a taxing power which other cities of the same class with population of less than thirty thousand would not enjoy, and hence would contravene the terms of the provision of section 7 of article 9 of the Constitution above quoted.

The Constitution was designed by its framers to be a single, symmetrical and harmonious chart of government of the people of the State free from repugnancy or conflict in any of its provisions, and presenting a single scheme of correlated parts for the control and regulation of all organs and departments of the State Government. The rules for interpreting its pro-

visions are the same as those prescribed by law for the construction of statutory enactments which are *in pari materia* or parts of a single statutory plan or code.

Applying these rules to the two sections of the Constitution above referred to, and it will be seen that there is no necessary conflict between their respective provisions; the one section (Art. 10, sec. 11) provides in explicit terms a direct and specific grant of power of taxation to cities in the following language:

"For city and town purposes the annual rate on property in cities and towns having thirty thousand inhabitants or more shall not, in the aggregate, exceed one hundred cents on the one hundred dollar valuation."

The other section (Art. 9, sec. 7), after referring to the Legislature the duty of providing "for the organization and classification of cities and towns" and limiting these to four, adds, to-wit:

"And the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."

This general language of the Constitution is necessarily referable to the objects had in view, that is *"the organization"* and division of all cities and towns into four classes. Therefore, in providing that when thus classified they should have similar powers and be under similar restrictions, the Constitution plainly referred to the constituent agencies and governmental functions which necessarily composed "the organization" of the cities and towns as a body politic under a particular class.

The section of the Constitution in question was in furtherance of the thought only that all towns and cities falling in a particular class should possess all the power and agencies conferred upon that class by the accordant acts of the Legislature. [R. S. 1909, sec.

8526, and chap. 84, art. 4.]   The Constitution in that section was not dealing specifically with the matter of limiting the power of cities and towns to levy taxes, but had an eye solely to sameness of organization, administration and government on the part of such cities and towns as should fall into a particular class.

When it came to the great question of the power of cities and towns to deal with the matter of taxation, the Constitution conferred that faculty upon them through authority to be granted by the General Assembly (Art. 10, sec. 1) and *limited* the exercise of that function by other sections *specifically* dealing with the rate and basis of municipal taxation (Constitution, art. 10, secs. 11 and 12).

By the first of these sections, as has been seen, the Constitution in express terms conferred upon any town or city of over thirty thousand inhabitants the right to assess and collect taxes for municipal purposes at the rate of one dollar on the one hundred dollars' valuation.   This provision is in no wise repugnant to any of the provisions of the independent section of the Constitution (Art. 9, sec. 7) dealing with the *sameness* of the organization, officers, departments, and government of all cities and towns belonging to the same class. The two sections are entirely reconcilable, the one dealing in *general* terms with the "general powers and restrictions;" and the other *specifically* pointing out the constitutional basis limiting the rate of taxation according to population, and applicable, irrespective of classification, to any town or city having the requisite population.

Neither does it (Constitution, art. 10, sec. 11) discriminate in favor of one city over another belonging to the same class, for by providing population of thirty thousand and over as a basis for a rate of taxation of one dollar on the one hundred dollar valuation, the Constitution has in itself provided a classification into which cities and towns will fall according to popula-

tion, in an equal and reasonable way, and one which comports with the essential purpose of the Constitution to fix the rates of taxation, according to the growth, development and needs of the various cities of the State.

Our conclusion is, that under the admitted facts, the city of Springfield had a population exceeding the constitutional basis for the rate of taxation fixed by it, and having restricted the aggregate of its assessments within the constitutional limits ($1 on the $100 valuation) there is nothing in the two sections of the Constitution referred to in the learned brief for appellants which disables the city of Springfield in collecting the tax for the support of its fire department, it not being claimed that such was not an essentially municipal purpose. The rulings in the cases cited by appellant, *on the points in judgment*, are not contrary to this conclusion.

II. The next point insisted upon by appellant is that the levy for the support of the fire department, conceding it to be otherwise for a legitimate municipal purpose, was not preceded by a vote of the qualified

City: Taxation In Excess of Sixty Cents Without Vote of People.

voters of the city prescribed by statute where a city of the third class levies taxes exceeding sixty cents on the one hundred dollars. [Sec. 9248, R. S. 1909.] That section of the statute was passed in 1905 (Laws 1905, p. 78) as an amendment of section 5853 of the Revision of 1899. The prime purpose of the later, as well as the original statute, was to authorize the taking of a *census* of its population by cities of that class in order to determine their constitutional power to impose taxes for city purposes. The section of the Constitution (Art. 10, sec. 11) which has been adverted to in the former paragraph graded the rate of taxation which cities and towns were empowered to levy by reference to their respective populations,

and in order to determine that question it provided that the rates specified should be governed by the number of inhabitants, according to the last census taken under the authority of this State or the United States.

Obviously, the chief object of the act under review, as well as the preceding act for which it was substituted, was to enable the cities entitled to the aggregate of taxation specified in the constitutional provision, to take advantage of a *State* census as well as a Federal census, and thus not require them (when otherwise entitled to levy such a rate) to wait for a new Federal census. This was a wholesome purpose on the part of the Legislature, for it would result in giving the city a right to levy the taxes granted by the Constitution contemporaneously with the growth of its population, trade and industries, and thus prevent the delay and embarrassment in the conduct of necessary municipal enterprises incident to a sole reliance upon the Federal census. To the extent of providing for the taking of a State census in order to permit cities and towns to exercise in full vigor the constitutional limit of taxation accorded to them, the act in question is clearly valid, and it is clearly invalid in so far as it undertakes, in addition to that beneficent purpose, to impose *another* condition than that prescribed by the Constitution, to-wit, the approval of the constitutional limit of taxation, by a majority vote of the qualified voters whenever the levy proposed, though otherwise proper, exceeded sixty cents on the one hundred dollars valuation. The Constitution gave the Legislature the right to provide for the exercise of the taxing power by towns and cities in any method other than those *specifically* provided by the Constitution. This reservation upon the part of the Constitution was for the evident purpose of preventing any change by the Legislature of the limitation by the Constitution. A grant of power by the organic law cannot be taken away by

264Mo20

the Legislature. Our conclusion is, that the ordinance in this case, under the agreed statement of facts showing that the taxation of one dollar for the one hundred dollars' valuation, was laid upon the specific basis, population, provided by the Constitution, was in all respects valid, and that the portion of the act of the Legislature (R. S. 1909, sec. 9248) attempting to condition it upon a popular vote was ineffectual.

The judgment in this case is affirmed. *Brown* and *Walker, JJ.,* concur; *Graves, J.,* concurs in result; *Woodson, C. J.,* dissents; *Faris, J., dubitante;* *Blair, J.,* not sitting.